## Bigelow *v.* Baker.

### In the Court below,

ISAAC BAKER, *Plaintiff* ; JAMES BIGELOW, and ELIPHALET STEELE, *Defendants.*

A. applied to B. to purchase of him a patent right ; B. doubting his solvency, declined giving him credit ; C. and D. then addressed a writing to B. to this effect—*A. is authorized by us to contract with you for a patent right,* &c. *and we consider ourselves holden to fulfil whatever bargain he may make with you relative to that business ;* whereupon B. transferred such right to A. and took his due-bill for the price ; A. was, from the first, insolvent, and neglected payment : Held, that C. and D. were liable

THE plaintiff declared, that one *Joel Rogers* made application to him, to purchase the right of making and vending a certain churning-machine, for which the plaintiff had obtained a patent from the President of the United States ; that the plaintiff being advised, that *Rogers* was not a man of property, declined giving him credit ; and that the defendants, to enable him to obtain said right, executed, directed, and delivered to the plaintiff the following writing :

" Mr. *Joel Rogers*, the bearer hereof, is authorized by us, " the subscribers, to contract with you for a patent right of " the churning-machine ; and we consider ourselves holden " to fulfil whatever bargain he may make with you relative " to that business.—*Hartford, June* 10*th*, 1803.

　　　　　　　　　　　　　" *Eliphalet Steele*,
　　　　　　　　　　　　　" *James Bigelow*."

The declaration further stated, that *Rogers*, by the direc-

tion of the defendants, presented this writing to the plaintiff, whereby the plaintiff was induced to sell him said right ; and that the plaintiff transferred to him " the right " of making and vending said machine in certain parts of " the United States, and took of said *Rogers* a written due-" bill for the same, in the words following :

*Amherst*, *June* 13*th*, 1803.

" Due to *Isaac Baker* one hundred and thirty-five dollars, " to be paid as follows, one hogshead of rum, the remainder " to be one third in loaf sugar, the other two thirds in brown " sugar ; the rum to be good West-India rum ; the above " mentioned goods are to be delivered at Hartford, at or be-" fore the first day of July next.

" *Joel Rogers.*"

" That said *Rogers*, at the time of making said due-bill, " was, and ever since has been, insolvent, and wholly unable " to pay the said due-bill, or any part thereof ; and the whole " of said due-bill remains unpaid, and the plaintiff has re-" ceived no part of the pay for the said machine sold to " said *Rogers* as aforesaid ; and the defendants on the 10th " day of June, 1803, became liable to pay to the plaintiff " the contents of said due-bill, and in consideration thereof, " assumed, &c."

To this declaration there was a demurrer ; which was adjudged sufficient.

*Edwards*, and *Bradley*, for the plaintiffs in error,

The foundation of *Baker's* right, to look for payment to the plantiff in error, is alleged, in this declaration, to be a writing made by them, addressed to *Baker*, and delivered to him by *Rogers*. And the principal question, in this case, respects the construction of this writing. The general terms, used in the concluding sentence, *(viz.)* " We con-" sider ourselves holden to fulfil whatever bargain he may

" make with you relative to that business," must, if the construction be made upon the whole instrument, be understood to be restrained and limited, by the previous clauses in the same writing. By the antecedent part of this writing, *Rogers* is declared to be " *authorized* by the subscribers, to con- " tract for this patent right." These words import an agency, to purchase for the plantiffs in error, which *Rogers* might have executed, if he had chosen to do so : for a person, purchasing for another, acts under an authority derived from that other ; but a person purchasing for himself, and in his own name, acts from his own authority, and not from any power delegated to him by another.

*Rogers* wanted no authority from the plaintiffs in error, to purchase this patent right for himself ; he might want a credit, but could never want an authority ; and understood in that sense, this clause is absurd. But, if we interpret this clause, to intend, that the plantiffs in error did thereby constitute *Rogers* their agent, to purchase this patent right for themselves, we shall thereby give to these words, their usual and obvious meaning ; and *Rogers* will then be understood, to be authorized to make any contract, for the purchase of this machine for the plantiffs in error.

This writing will then be understood, according to its only true meaning and obvious import, to read thus : " We " constitute Mr. *Rogers* our agent, to purchase for us, your " patent right, &c. and we will fulfil his agreement for such " purchase."

But it may be said, that this declaration, which is confessed by the demurrer, alleges, that " this writing was made, " to enable *Rogers* to obtain the right of making and vending " this machine." To this objection the answer is, that the purposes, for which the writing was made, are declared in the writing itself, and have been shown to be, to enable *Rogers* to purchase for the plantiffs in error, and not for himself. This averment, then, is contradicted by the written evidence,

set out in the declaration ; but it was not competent to aver against this writing ; the warrant could not be proved in contradiction to the writing ; and not being well pleaded, is not admitted by the demurrer.

It appears from the subsequent parts of this declaration, that *Rogers* has never executed this agency, with which he was entrusted by the plantiffs in error—that he did not purchase for them, but for himself, and to secure the purchase money gave to *Baker* his own due-bill. The authority given *Rogers* could only enable him, if he pleased, to act as the agent of the plantiffs in error ; it could not deprive him of the power of acting in his own individual cap city ; and if, upon the whole, *Baker* chose to deal with him in that capacity, as it seems he did, upon what principle is it, that the plantiffs in error should now be brought in, to fulfil this contract ?

It is said, that *Rogers* has not paid his due-bill ; and, therefore, the plaintiffs in error must pay it : but, if this is to be assumed as a substantive ground of liability, it would follow, that they must pay not this debt only, but every other debt, which this *Rogers* may owe, and even the debts of every other person who may be unable to pay. This is proving too much, and the argument is refuted by its reduction to this absurdity.

Again, it is said, that, in consideration of their liability, they have promised to pay this due-bill. Now, if they were before liable to pay, this promise is unnecessary ; and, therefore, may be well laid out of the argument : but if they were not before liable, this promise does not make them so ; because it is then without any shadow of consideration, and the maxim is undoubt d, that *ex nudo pacto non oritur actio.*

*Dwight*, for the defendant in error.

It appears by this declaration, that *Rogers* attempted to purchase of *Baker,* the defendant in error, the patent right,

Y y

but wanting credit, failed.—Upon this, he obtains of *Bigelow* and *Steele*, the plaintiffs in error, the letter recited in the declaration. That they gave him this letter, for the purpose of enabling him to obtain the patent—and that on the credit of the letter, he did purchase. To this there is a demurrer.

By the plaintiffs in error, it is contended, That the letter authorized *Rogers* only to purchase *for them* ; not *for himself*. But the plain language of it, refutes this idea. " *Rogers* is " authorized by us to contract with you, and *we consider our-* " *selves holden to fulfil whatever bargain he may make* with " you." That is, we authorize him to make just such a bargain as he pleases, and we will fulfil it. Instead of being restricted, here is the utmost latitude given. The plaintiffs' contracting to fulfil whatever bargain *Rogers* may make, necessarily implies that they had given him liberty to make whatever bargain he might think proper. Any other construction would render the writing useless. The case compares with that of *Tyler* v. *Marsh* ; (a) where this Court established the construction I contend for, in a writing very nearly the same with this.

It is perfectly clear, that *Rogers* did not want the authority of *Bigelow* and *Steele*, to contract in his own name. But he wanted their credit to contract at all. It is so expressly averred, and the demurrer concedes it. *Rogers's* object was to buy for himself ; and it is to be presumed, that the plaintiffs knew it to be so ; and of course, it will follow, that they meant to authorize him to contract for himself ; otherwise, they would have restricted him in terms, to purchase for them, and in their name. Besides, for ought that appears, the contract, though in *Rogers's* name, was for their benefit.

We do not claim to recover of *Bigelow* and *Steele*, on the ground of an implied, but of an express promise ; and that reduced to writing.

BY THE COURT,

The judgment was affirmed.

(a) Ante, *vol.* 1. *p.* 1.